UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:12-cr-131-WTL-TAB-2 |
| | ) | |
| OMEGA CHATYOKA, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON MOTION TO REVOKE DETENTION ORDER

Before the Court is the Defendant's motion to revoke detention order (Docket. No. 49).

The Court held hearings on the motion on September 7, 2012, and October 2, 2012, and the parties

submitted briefs in support of their respective positions. The Court, being now duly advised,

**GRANTS** the Defendant's motion.

I.      STANDARD

Pursuant to 18 U.S.C. 3145(b), "[i]f a person is ordered detained by a magistrate judge . . .

the person may file, with the court having original jurisdiction over the offense, a motion for

revocation or amendment of the order. The motion shall be determined promptly." The court

conducts a de novo review of the magistrate judge's detention order and it need not defer to the

magistrate's findings. *E.g.*, *United States v. Levine*, 770 F. Supp. 460, 465 (N.D. Ind. 1991).

II.      BACKGROUND

The Defendant Omega Chatyoka and her husband and co-defendant Bernard Chatyoka

have been charged with multiple counts of wire fraud and aiding and abetting the filing of false tax

returns. The United States moved to detain Ms. Chatyoka pending trial on the ground that there

was a serious risk of flight. United States Magistrate Judge Debra McVicker Lynch agreed and, on

July 24, 2012, ordered Ms. Chatyoka detained without bond.

On August 22, 2012, Ms. Chatyoka moved to revoke the magistrate judge's order of detention. This Court held a hearing on the matter on September 7, 2012, during which it heard evidence regarding Ms. Chatyoka's access to certain bank accounts. The Court ordered defense counsel for Ms. Chatyoka to provide additional evidence regarding Ms. Chatyoka's access to these accounts; counsel did so on September 17, 2012. The Court held an additional hearing on the matter on October 2, 2012. The Court now rules as follows.

## III.   DISCUSSION

The United States has requested detention on the ground that Ms. Chatyoka is a flight risk and will not appear as required, a matter the United States bears the burden to prove by a preponderance of the evidence. 18 U.S.C. § 3142(e)(1); *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985). The standard for pretrial detention is "reasonable assurance"; the court may not demand a showing that guarantees the defendant's appearance. *Id.* at 764 n.7.

In considering detention or release, the Court must weigh the evidence presented in accordance with the factors set forth in 18 U.S.C. § 3142(g). Specifically, the Court must consider the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings.

After conducting the requisite de novo review, the Court finds and adopts the following portions of the Magistrate Judge's order:

    a.  Omega Chatyoka was born March 7, 1961. She is a lawful permanent resident of the United States and a citizen of the Republic of Zimbabwe. She is married to Bernard Chatyoka, who is charged with her as part of the fraudulent conspiracy. He too is a lawful permanent resident of the United States and a citizen of Zimbabwe. They married in 1989 and have one child together, who is

2

17 years old. Mrs. Chatyoka has four other children, all of whom are adults. [ . . . . ]

b.  Omega Chatyoka originally came to the United States with her five children on a visitor's visa in 2001. She applied for political asylum, which was granted in 2002, and she has been a lawful permanent resident of the United States since 2006. According to Mrs. Chatyoka, in 2011 she began the process to become a naturalized United States citizen. [ . . . . ]

c.  Omega Chatyoka holds a Zimbabwe passport.

[ . . . .]

k.  [ . . . .] Omega Chatyoka has frequently traveled to and from the United States. Since first entering the United States in about 2001, Omega Chatyoka has traveled extensively out of the country. She has left the United States at least eleven times, traveled to London, England in 2004, 2006, and 2008, to Johannesburg, South Africa in 2007, and to the Republic of Senegal many times from 2007 through 2012.

l.  There was no evidence that Omega Chatyoka has employment except through the business that effected the fraudulent tax scheme with which she is charged.

m.  Mrs. Chatyoka's criminal history is minor. She and her husband were charged with misdemeanor battery in 2009, possibly as a result of a domestic dispute between them.

In support of its argument for detention, the government contended that Ms. Chatyoka's access to large sums of money and the difficulty of controlling her travel were evidence her appearance at trial could only be reasonably assured by pretrial detention. At the time the Magistrate Judge considered Ms. Chatyoka's detention, she did have access to large sums of money, and the status of her Zimbabwean passport was in question. The magistrate judge relied on these facts, plus Ms. Chatyoka's lack of strong ties to the community, in concluding that the United States had established by a preponderance of the evidence that Ms. Chatyoka was a flight risk. However, recent developments render these issues less concerning.

With respect to the Chatyokas' accounts (listed in Government's Exhibit 7), counsel for Ms. Chatyoka has represented the following:

3

Ms. Chatyoka is in fact authorized to complete wire transfers on Credit Union accounts 1 and 2 (ending 9200-0 and 9200-20). Defense counsel is, however, in the process of removing this authorization. As to Credit Union accounts 3 and 4 (ending 2866-0 and 2866-20), defense counsel has directed the closure of both accounts. A check for the balance has been deposited in counsel's IOLTA account.

Counsel is in the process of closing JP Morgan Chase accounts 5 and 6 (ending 6407 and 7435). Counsel has encountered difficulty closing account 5 because it currently has a negative balance. Ms. Chatyoka has no authority to access JP Morgan Chase accounts 7, 8, and 9 (ending 6373, 3783, and 2678) as they belong to Bernard Chatyoka; in fact, account 7 has been closed. JP Morgan Chase accounts 10, 11, 12, and 13 (ending 1992, 3660, 2660, 6415) have been closed and the balances deposited in Ms. Chatyoka's name into counsel's IOLTA account. Portions of these funds have been segregated for attorney's fees, which counsel estimates to currently be $5,000 to $6,000.

Finally, defense counsel is in the process of closing Fifth-Third bank account 14 (ending 5785), or at leasing having it retitled in a manner that eliminates Ms. Chatyoka as a co-signatory. This account currently has a negative balance.

Defense counsel has also clarified that Ms. Chatyoka's passport is in government custody. Finally, the Court notes that all of Ms. Chatyoka's immediate family lives in the United States, and the evidence reveals that Ms. Chatyoka is very close with her family.

As a result of these developments, the United States can no longer show by a preponderance of the evidence that Ms. Chatyoka poses a risk of flight. Rather, based on these recent developments, as well as certain release conditions outlined below, the Court is reasonably assured of Ms. Chatyoka's appearance at future proceedings after she has been released. Her

release is therefore in order.

The Court imposes the following conditions of release, in addition to conditions set forth under separate order:

1. The U.S. Probation Office shall send a letter to the Zimbabwe Embassy, prohibiting Ms. Chatyoka from applying for a replacement passport.

2. Ms. Chatyoka shall have no contact with co-defendants (including her husband), victims, or witnesses to the alleged crimes.

3. The U.S. Probation Office shall submit to the Court a report and recommendation regarding Ms. Chatyoka's compliance with the terms of her pretrial release after thirty days of release have expired.

4. Ms. Chatyoka shall have access to funds in defense counsel's IOLTA account to the extent necessary to pay her living expenses. In the event Ms. Chatyoka has need of funds for living expenses, she shall inform defense counsel, who will seek approval for the expense from U.S. Probation Office. On approval by the Probation Office, defense counsel shall write a check on the IOLTA account directing the funds to be paid directly to the service/goods provider, as the case may be.

5. Defense counsel shall provide an updated accounting as to the status of all accounts, as well as funds in his IOLTA account credited to Ms. Chatyoka.

6. Defense counsel shall insure that wire transfer authority for Ms. Chatyoka on the Credit Union 1 accounts is revoked.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to revoke detention. In addition to the conditions set forth above, further conditions of Ms. Chatyoka's

release have been set under separate order (Docket No. 70).

      SO ORDERED: 10/04/12

                            Hon. William T. Lawrence, Judge
                            United States District Court
                            Southern District of Indiana

Copies to all counsel of record via electronic communication.